The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit, Oyez, Oyez, Oyez. All persons having a manner of form of business, for the Honorable, the Judges of the United States Court of Appeals, I must give their attention. The Court is now sitting. God save the United States and this Honorable Court. Good afternoon, Counsel. I'm Judge Keenan, and Judge Wynn and Judge Richardson and I are pleased to be hearing your case today. We're proceeding first in the case of Outdoor Amusements v. Department of Homeland Security. Mr. Pierce, are you ready? I am, Your Honor. All right, please proceed. Thank you, Your Honor. Good afternoon and welcome from beautiful Annapolis, Maryland. I am here representing the plaintiffs in this case, the Outdoor Amusement Business Association as the lead plaintiff, as well as several others. I would like to begin, Your Honor, by saying that when we originally filed this, perhaps more than anything, we were hoping to determine the answer to the question, whose regulations appear in the Department of Labor's portion of the Code of Federal Regulations at Subpart A and by what authority were those regulations promulgated? We still, despite the government's circular retreat on the authority question as the trial judge termed it, do not have a firm answer from the government as to how that happened. Substantively, I would like to begin by addressing the issue of independent authority. The first point I would like to make is that, as always, only Congress determines when an agency has the authority to promulgate rules. In this case, there have been a variety of prior court decisions. There has been fairly extensive litigation on similar issues. In this instance, those courts that have reached the issue of the Department of Labor's independent authority have all determined that they do not have independent authority. No case has found otherwise, although there are cases that have not reached the issue of independent authority. In doing so, that is an acknowledgment that only Congress determines that. Because Congress never chose the Department of Labor as its selected instrumentality for the implementation of the H-2B program, that alone shows that the Department of Labor is not authorized, because of the operation of the unlawful delegation doctrine, in order to be able to exercise governmental functions through rulemaking or through adjudication. Which rule are you talking about? Are you talking about the 2008 rule and the 2015 rule? Right now, I am addressing primarily the 2015 rule, but the DHS regulations, which includes the 2008, are different. Right now, I am just focusing on independent authority of the Department of Labor. So, independent authority that would arise from what I suppose the other side would say is a delegation of authority to DHS, your contention is that they could not delegate this authority to them? We do contend that, yes. Notwithstanding, they have been doing this for quite a while. Well, they have been doing something, and exactly what the something is, is far from clear. They have been issuing labor certifications. They have been issuing labor certifications certainly since 2008. They had procedures related to it prior to that, but the authority by which they were doing so has been articulated in many different ways. The chart that we have included in the joint appendix at pages 24, 25, and 26 is attempting to show the extensive different claims that they have made as to their authority and how it is that they are able to proceed in the way that they are doing so. But what puzzles me is DHS only has limited expertise when it comes to labor, and this particular visa category requires DHS to determine, is there anybody else that can do this work? I am sort of shorting that in the United States for the most part. It is limiting in terms of the number of ones it can give out. And there is information, of course, the regulation, I guess you agree, it does allow DHS to consult with the Department of Labor, but in essence they are simply saying, you know, tell us, certify that this is something that falls within the statute. And it has been done for a long time.  The first point of distinction is that Homeland Security has sacrificed, has abandoned its policymaking function. So it is one thing to make a determination under the statute, but Congress still asks Homeland Security to exercise policymaking function. And whether they have a particular level of expertise is beside the point. It is still their responsibility to make the determination. They have abandoned. Excuse me, Mr. Pierce, don't we have to consider this within the context of Chevron deference and what the word consultation means and how broadly we should defer to the agency's construction of that term? I haven't heard you talk about that yet, and I think you need to. Okay. Well, first of all, the answer to your question is absolutely not. Chevron deference does not apply in this case under what has been termed Chevron step zero. You should not even reach the question of Chevron deference because of the numerous reasons why Chevron does not apply here. The first being that because this is a constitutional avoidance issue, you are obligated to rule narrowly and to avoid making a constitutional question. To find that the Department of Labor has authority here would put you right in the middle of a very serious non-delegation issue. Don't we have to decide what the word consultation means in terms of what the Department of Homeland Security was authorized to do? You do not. In order to make the determination of whether Chevron step zero has been accomplished, there was some disagreement, if you will, when this issue was raised within the Supreme Court's Gundy decision about a year ago. But in order to be able to apply Chevron, you need to figure out does it apply or not. And these doctrines don't really turn on whether there's ambiguity here. These doctrines, there's five of them that we have listed in our brief, are independent of whether or not there is ambiguity in the first place. That's to be determined. You're saying the word consultation is irrelevant to our inquiry here? It's not that it's irrelevant. It's that the first issue to engage on is whether or not Chevron applies. It seems to me, though, if you could answer this, that what you're doing is saying this is not consultation. It's delegation, and it's contrary to the non-delegation principles under which the agency is required to operate. Isn't that what you're saying? Yes, definitely. And because, following through on that point, because Homeland Security is no longer determining and because the Department of Labor is no longer consulting, they are actually determining the fact issues that are required under the statute, and Homeland Security is making zero effort to make those determinations, either as a casual matter. Counsel? Counsel? Just to go back to Judge Keenan's question, I think I understand your argument, the Chevron step zero. If we disagree with you about that, do you agree that that sort of dooms your consultation argument? So if we disagree at step zero with you, do you agree you lose Chevron's actual application? No, definitely not. Why? Because the statute is clear, and in fact when this issue was raised in the Tenth Circuit's G.H. Daniels, which is an unpublished decision, which we have referenced, they did not even address Chevron step zero. They determined that the statute was clear on its face and that the Homeland Security had improperly assigned or re-delegated authority to the Department of Labor, and that was not proper under the statute. Can you address Bennett v. Speer for us? So that's another statute where an agency is required to consult with another executive agency within the executive branch, and Bennett v. Speer says that consultation, which results in a biological opinion, is effectively a final agency action because it has, like, as you would say, sort of delegated authority to decide the ultimate question. And so that strikes me as an example, or at least the Supreme Court seems to think, that consult is broader than you've suggested. So why don't we look to Bennett v. Speer as an example of using the word consult much more broadly than you've suggested? Well, Your Honor, I think that the more useful analogy is the immigration case law, Why don't you start with Bennett v. Speer and then go to case law, other case law, if you want to. I want you to explain to me why I don't look to Bennett v. Speer. I know that I cited that case, but I can't go into the details of it right now. I apologize for that. That's totally a fine answer. I just wanted to know if you had an answer, that's all. Okay, well, I'm sure I did. But in the year and a half since I wrote the brief, I don't have one currently. But the immigration case law is very clear that the act of consultation, as it has been construed in the history of the immigration statutes here, that that term means that you cannot defer to your consultant. You must use your personal judgment and independently reach a determination, something that Homeland Security has chosen not to do in this case. And curiously, even the Department of Labor was hooked by that in a couple of cases that we cited in the 70s, where they were attempting to re-delegate authority to the state workforce agencies, theoretically consulting. And in fact, the determinations by the Seventh Circuit was that that was improper, that they were exercising authority that only Department of Labor could do because they had the ultimate authority. But before your time's up, counsel, can you address a little bit how you have standing on the 2008, what I call the 2008 regulations, and in particular, if we struck those down, how does that solve any of the problems or the injuries that you've alleged? How does it redress those? Well, as to standing for the 2008 regulations, is that what your question was, Your Honor? Yes. Well, we have a variety of things that are addressed to that. And the first thing is that when Homeland Security unleashed the beast and authorized the Department of Labor to proceed, the injury that fairly flows and is traceable to that is what the Department of Homeland Security enabled the Department of Labor to accomplish. So that's the first issue there. And then we talk in the affidavit that we submitted from the OABA's executive director, Mr. Chico, about the injuries that our members continue to experience, as well as the injuries that our association continues to experience at some length. And the fact that it is the Homeland Security's regulations that enabled that to occur allows the injury claim to be traced back to them. Okay. Thank you, Mr. Pierce. So you'll have rebuttal time later. We'll now hear from the Department. Ms. Gray, please. Good afternoon, and may it please the Court. Catherine Gray from the Department of Justice on behalf of Defendants at Police. Your Honors, this is an appeal of the District Court's decision upholding the Department of Homeland Security and Department of Labor's exercise of longstanding authority to administer the H-2B program. Despite DOL's 68-year exercise of authority in this program, through this suit, appellants seek to eliminate DOL from having any role due to what they perceive as administrative and bureaucratic inconveniences that are inherent in any government program. But the H-2B program has never existed without DOL. Long before and consistently after the 1986 creation of the program, DOL has exercised the very authority that appellants challenge here over 50 years later. While counsel for appellants has just covered a broad range of theories, with your Honors, this case can really be distilled to two central points. First, DHS's 2008 exercise of its clear discretion to condition its approval of an H-2B petition on DOL's labor certification. And second, DOL's longstanding exercise of rulemaking authority and its statutorily prescribed role as DHS's consultant. The District Court concluded that appellants' challenge to DHS's 2008 regulations were time-barred and it alternatively upheld both DHS's labor certification requirement and DOL's rulemaking authority. We ask that this Court uphold both holdings. Starting with the first point, appellants' 2016 purely facial challenges to DHS's 2008 rule are plainly time-barred. And that's under 28 U.S.C. 2402A. Thus, this Court doesn't even need... Ms. Gray, if I could ask you, are the 2008 rules even in existence anymore? Your Honor, DOL's... So, in 2008, the departments both promulgated their own regulations. And what is the issue in this case is DHS's 2008 regulations. And those specifically established the requirement for the labor certification from DOL. But aren't they now part of the 2015 rule? No, Your Honor. So, the 2008... They are not. So, DHS's 2008 rule was promulgated. It's been in existence. It's been in effect ever since. And those are independent of the 2015 joint rules. So, to be clear, the 2008 DHS rule initially established that every H-2B petitioner must obtain a labor certification from DOL. The 2015 joint rules, on the other hand, established the standards under which DOL will issue labor certifications. And the district court does a good job at differentiating between the rules. And because DHS promulgated that 2008 rule, it has not since touched that labor certification requirement. And because appellants have brought purely facial challenges to that rule, under this court's precedent in higher order, their claims against the 2008 rule accrued when DHS promulgated that rule and when it published that rule in the Federal Registrar. It did that in December 2008. Counsel, can you address the question I asked your colleague? If we were to strike down the 2008 mandatory certification requirement that we're talking about, how would that redress the injuries that the plaintiffs have alleged here? I mean, because before we get to whether it's time barred, I think we've got to establish that they have standing to challenge it. Would that redress their injury in some way? No, Your Honor. In fact, at no point in this litigation until, well, I should say until their supplemental briefing on appeal. But at no point during the litigation in district court did appellants identify any injury from DHS's 2008 rule. To the extent that they attempt to do so, and counsel for appellants today has indicated some theory about how, I think he said they're injured through the 2015 rules because the 2015 rules can't operate. I might have gotten that wrong, but my understanding is that his claim is that the 2015 rules cannot operate without DHS's 2008 rule. And that defies the fact that DHS's 2008 rule has operated and been in existence in the years, in the interim between promulgating that rule and the 2015 rules. Sorry, lots of words here. Okay, Ms. Gray, could you clear this up then? What impact, if any, did the 2014 district court decision in Florida have on the 2008 rule? So, the district court's decision in Bayou entered an injunction, I believe, against DOL's independently promulgated 2012 rule. And so that rule is no longer in existence, and it's not an issue in this case. Okay, to what extent does your argument rely on the particular expertise of Department of Labor? In other words, how broad is the power of consultation? Does the power of consultation with another agency depend on that other agency's expertise, or is it broader than that? What kind of a rule are you asking for today, or holding? So, Your Honor, under Chevron, which clearly applies in this case, despite appellants' various theories about a Chevron sub-zero, Congress first gave DHS broad discretion to prescribe by regulation the, quote, conditions for participating in the program. And it granted DHS broad discretion to promulgate regulations to determine what form the petition needs to be in and the content of that petition. And then it also directed DHS to consult with appropriate agencies of the government. Now, under Chevron Step 1, the consultation clause is plainly, as every single court to have touched on the Department's authority to issue regulations has held. Under Chevron Step 1, that consultation language is indeed ambiguous. And so, because of that, DHS has discretion to fill in any statutory gaps that are left through that ambiguity. And DHS has done so by determining, first, that it should consult with DOL, as it's done since the beginning of this program for half a century. And second, that its consultation should take the form of a temporary labor certification. And so, what we would ask your honors to do is uphold the district court's decision, finding that Chevron applies, that DHS's determination and exercise of its broad authority to rule make is reasonable. And that would be my answer to your question. Counsel, can I ask maybe a variation of that question? If DHS decided to consult with the Fish and Wildlife Service to get these certifications, could a court reasonably find that that's not an appropriate agency for which DHS to consult on labor issues would be? Your Honor, absolutely. I think that is the entire point here. DHS consults DOL specifically because of its longstanding role and its expertise that DHS lacks. Very clearly, DOL is best suited to determine whether importing foreign workers will harm the domestic labor market. And so, yes. Can I interject there? So, you said two things. One, DOL's longstanding role, and two, their expertise. Correct. I want to sort of get you to answer a little bit how much work the longstanding piece is doing. So, imagine that DHS decided next year to do new rules and say, instead of the Department of Labor, we're going to go to the Department of Commerce, who we find has this similar expertise in their Bureau of whatever it is, hypothetically. And they change it from DOL to Department of Commerce. But, you know, Department of Commerce also has some information and knowledge about these types of questions. Could they do that if they had appropriate expertise in commerce? Could they make that switch such that expertise is what's really driving this and not longstanding practice? Your Honor, I think that DHS could. I mean, Congress purposely left the language ambiguous. And in 1986, when they bifurcated the H-2 program, Congress specifically cabined DHS's discretion on who to consult for the H-2A program, the sister program. And so, in doing so, it left the statute unchanged for H-2B. And therefore, it gave DHS the discretion to choose the agency. With that said, I do think that there is a limiting principle here. And perhaps this is, you know, adverse to my interest in suggesting this affirmatively. But I think under Chevron Step 2, of course this is reasonable because DOL has that institutional expertise. Now, if they were to go, as the District Court hypothesized, to a private in the Army to consult about labor market questions, under Chevron Step 2, perhaps that would be unreasonable. But in this case, that's not what they've done. DOL's determinations and its role in this program are also reasonable because 1101A15H-2B provides that no foreign worker may be imported unless U.S. workers are not available and capable of performing the job the employer is requesting. That's a threshold determination that DHS must make before it gets to the point of making an ultimate determination on the H-2B petition. And so, because that's a threshold determination, and because DOL is the agency with the expertise, and because it's played a role providing labor certifications for over half a century, and because Congress has specifically endorsed that several times in both pre-enactment, during the enactment of the 1986 statute amending and bifurcating the programs, and in post-enactment statutes amending the INA, and in fact amending the H-2B program, providing specifically with DOL the authority to act in an enforcement role, it's entirely reasonable that DHS has set up the program in this way. And in doing so, DHS has a hand in every aspect of the program. It's issued rules alone, without DOL, setting up this regulatory scheme where it consults with DOL and DOL issues the labor certification. Excuse me, your time has expired. If you'd like to wrap it up real quickly. Sure, Your Honor. So, this Court should affirm the District Court's decision granting summary judgment to defendants. In over half a century of the program, Congress has never seen fit to aggregate DOL's H-2B role. And we would ask that this Court decline to take from the Department's powers that they have exercised openly for decades. Okay. Thank you. Thank you very much. At this point, we'll hear from the NCCIS Council. Thank you. I'm Claremont Fraser Ripley. I'm pleased to have this opportunity to share the position of the amici with the Court. I plan to focus on two main points, but I want to start with a question Judge Richardson asked, the hypothetical he posed about whether it would be appropriate for DHS to now pivot and name Department of Commerce as the agency with which it intends to consult. And I think the proper way to analyze that is under Chevron. Congress clearly gave DHS the authority to choose an agency to consult with and to decide what that consultation should look like. Those are gaps that Congress left, and DHS then, under Chevron, gets to decide how to fill those gaps. So, if they chose Department of Commerce, the question would be, is that a permissible way to fill the gap? Is that consistent with the statute? And I think there's an argument it would be, because Department of Commerce could probably also answer the question, are U.S. workers available, which is the issue that the consulting agency is supposed to provide advice on. Why is the answer not so simple as to simply say that it provides for consultation with appropriate agencies, and that appropriate agencies means whatever agency is appropriate, which could include the Department of Commerce, if it meets that limitation. I agree, Your Honor. Why do you have to go through this circular other way to get around to what the language actually says? It says you can consult with appropriate languages. It gives it that authority. So that could be the Department of Commerce, but you'd have to go through the determination, is it an appropriate agency? Exactly. Why doesn't that just answer the question? I think it does answer the question, and I think DOL is an appropriate agency. In fact, in 1986, when Congress bifurcated the program and it specified DOL as the appropriate agency for H-2A, Congress was agreeing when we're dealing with this H-2 program, when DHS is seeking advice from somebody about the labor market, DOL is an appropriate agency. If we move away from the consultation question, what would be your response to the claim that DOL does not have the authority to promulgate these rules, in other words, invalidating the 2015 rules? I'm glad you asked. I think that DOL has implicit rulemaking authority. I think that their authority is derived from the statute from 8 U.S.C. 1184C, where Congress created this duty of the Attorney General, now DHS, to consult, and when Congress made that delegation, they expected another agency, someone in addition to DHS, to be involved in the administration of this program. When Congress asks an agency to act, they're not asking agencies to act on an ad hoc basis. The way agencies act is through rulemaking, and the fact that Congress gives implicit rulemaking authority has been recognized many times. It was recognized in Chevron, U.S. v. Meade, Long Island Healthcare. Those are Supreme Court cases that acknowledge that a grant of rulemaking authority can be implicit, and it is my position that Congress granted rulemaking authority to whichever agency DHS chose, specifically on that consultative question, on whether U.S. workers are available and capable to do the job. In fact, DOL has been doing that. It has been providing that advice, that consultation, since 1953 to DAG and later DHS, based on a set of uniform rules. Those rules in the beginning were the U.S. Employment Service rules used for the interstate recruitment system, and the certification was through a clearance order, but since 1964, DOL has been exercising its independent rulemaking authority to create legislative rules for this program, for the H-2 program. If we agree there is some implicit delegation of authority here, what's our limiting principle? How should we deal with that? That could be pretty broad and have enormous implications. What is your position on that? Should we narrow it to specific circumstances here? I think you should do what the Supreme Court did in 1973 in mourning the family publications, where they said that rules issued by an agency based on implicit rulemaking delegation must be reasonably related to the purpose of the enabling legislation. I'm not suggesting that DOL has unfettered rulemaking authority for the H-2B program, but DOL does have rulemaking authority related to that consultation that was created by Congress in the statute. Let me make sure I understand where you're going with that. Are you saying it is located to the very specific circumstances here, or are you advocating for a broader interpretation of it? I think that the way DOL has behaved, DOL also has a separate delegation related to enforcement, but in terms of the labor market certification. Give me a clear answer. Broad or narrow? Pick one. I'm not feeling you and where you're going with this right now. Do you want us to interpret this broadly, or do you want us to interpret it narrowly? Is that what you're advocating? I'm sorry that I'm having trouble answering that. I think what DOL has done is proper because it has promulgated regulations that are reasonably related to what the statute authorized DOL to do, that are reasonably related to determining are U.S. workers available. I wanted to give the site for that case. It's 411 U.S. at 369. All right. Thank you, Ms. Ripley. We'll hear rebuttal now. Thank you, Judge. Leon Sequeira on behalf of the Outdoor Amusement Business Association. I'd like to pick up where my co-counsel left off with the unmistakable and unarguable proposition that there is no express rulemaking authority granted to DOL in the statute with regard to the H-2B program. There has been a lot of discussion here about the consultation clause and the meaning of the consultation clause. But I would respectfully submit that that misses the point. The issue is not whether Homeland Security can consult with DOL or the Department of Commerce or any other agency. The issue is what the Department of Labor has done purportedly in furtherance of it providing consultative advice. And that is the issue. The Department of Labor has issued binding substantive legislative regulations for which there is no express authority. It is unmistakable that only Congress can authorize an agency to issue legislative rules. There is no express grant of that authority. Do you need express authority if, in fact, you have implicit delegation of authority here? Would it need to be expressed? All of the cases, Judge, cited regarding implicit rulemaking authority, in each one of those cases,  was whether they also implicitly were granted rulemaking authority. That is not this case. Do you not agree that DOL, by virtue of the consultation provision, is granted the authority to consult? Forget rulemaking. You would agree that if DHS just called up DOL on the phone and said, what do you think? Do we have workers or do we not have workers? This grants DOL the authority to provide that consultation, right? Without a doubt, Judge. Then why is that different from the implicit delegation cases that we have cited? DOL has the authority to consult. The question is, do they have to do it totally ad hoc or do they have an implicit delegation to structure their consultation in a manner that, as your co-counsel said or your colleague said, that's reasonably related to the purpose of that delegation of authority? Because, Your Honor, there's nothing in the statute that specifically names the Department of Labor and grants them any basis or any modicum of authority, unlike Meade or Morton versus Reeves. You just conceded that they have the authority to consult. So they have authority. You conceded they have authority. The question is only, do they have the ability to structure the use of that authority or not? And that seems to be exactly the implicit delegation question. Well, I would argue, Your Honor, that to the extent, well, to take your example, the Department of Homeland Security could certainly call up the Department of Labor and ask them, for instance, what is the unemployment rate in a certain state where this employer seeks to employ H2B workers? Certainly the Department of Labor could provide that advice. It's within its expertise. That, however, is wholly different from the Department of Labor on its own promulgating an extensive, complicated set of binding regulations that require an employer to jump through a series of hoops. All of the other cases with implicit delegation, or even the cooperative federalism cases, all have as a predicate an other agency, a third party, that already has some inherent authority. And here, the Department of Labor has no inherent authority, and none has been granted by Congress to engage in legislative rulemaking. And to further buttress the point, I would respectfully submit the court needs to look no further than the H2A program, the sister or brother program of H2B at 8 U.S.C. 1188. In that case, Congress specifically and clearly articulated that a condition precedent is established, that you must go to the Secretary of Labor and obtain a labor certification, and that the Secretary of Labor has authority to issue regulations in that regard. None of that appears with regard to H2B. So I think it's an implausible reading of the statute to suggest that consultation includes a delegation of rulemaking authority. That's an elephant hiding in a mouse hole. Counsel, could you help us out with regard to the agricultural rule? Had the department been exercising a power of consultation prior to Congress's grant of specific authority? I don't know, Your Honor. I suppose you could- As I submit to you, that might make a difference in the analysis. I wouldn't agree with that, Your Honor. I think that even if that had happened in the past, in 1986- Why not? I mean, Congress could be signaling its acquiescence on one end with regard to the HB2 visa program, saying, well, it's going along fine, we're not going to do anything. But if the DOL hadn't been exercising an analogous role of consultation before in the agricultural program, Congress could have laid it out specifically to get it jump-started. We'll look into it. Thank you, Your Honor. Anything further? Would you like to wrap it up? Well, I would just say that prior to the split in the two programs, I think the Department of Labor treated agricultural and non-agricultural workers and applications in a similar manner, which just highlights the structural difference between H2A and H2B now. Congress clearly intended for DOL to have a rulemaking role in one and not in the other. We would urge the court to reverse the district court's decision. Okay. Thank you very much. Thank, counsel, for your participation in our altered format. We appreciate all the hard work you put into the case, and we're all operating at a little bit of a level of difficulty because of it, but you've made it a lot easier for us today. So thank you very much. We'll take a brief recess before we call the next case. Thank you. Ms. Unger, court will take a brief recess.
judges: Barbara Milano Keenan, James A. Wynn Jr., Julius N. Richardson